UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| HOPEMAN BROTHERS, INC., | |
| Plaintiff, | |
| v. | Civil Action No: 4:16-cv-187 |
| CONTINENTAL CASUALTY COMPANY, et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Continental Casualty Company ("Continental") and Defendant Lexington Insurance Company's ("Lexington") Joint Motion to Bifurcate (ECF No. 47) and Joint Motion to Stay Discovery (ECF No. 49), which were referred to the undersigned by Order of Court dated September 21, 2017 (ECF No. 59). The Motions are fully briefed and ready for disposition. Continental and Lexington (collectively "Defendants") have requested a hearing on the aforementioned Motions (ECF No. 63), however, the Court finds that oral argument is unnecessary and will rule upon the subject motions without a hearing.[1]

### I. Factual and Procedural Background

This dispute arises out of excess insurance policies procured by Plaintiff from Defendants for liability coverage to Plaintiff for any and all sums Plaintiff would become legally obligated to pay as damages because of personal injury, property damage, or advertising injury that occurred during the relevant policy periods of approximately 1971 through 1974 and 1974 through 1977. Beginning in 1979, Plaintiff was named in over a hundred thousand lawsuits brought by

---

[1] *See* E.D. Va. Local Civ. R. 7(J) ("In accordance with Fed. R. Civ. P. 78, the Court may rule upon motions without an oral hearing.").

individuals who claim to have suffered personal or bodily injury as a result of their alleged exposure to asbestos fibers contained in marine interior materials sold by Plaintiff. Unsurprisingly, Plaintiff has and continues to incur substantial costs and expenses in defending and settling these lawsuits. Up until recently, these defense costs were covered by other insurance policies, however, those polices were exhausted or were close to exhaustion. In 2013, Plaintiff contacted Defendants, who were insurers that provided the excess policy coverage, to advise of the exhaustion or expected exhaustion of previous polices, and the impending need for Defendants to honor their excess coverage policies. Continental began making payments, but stopped in or about July 2014. Defendant Lexington never began making payments. On December 27, 2016 Plaintiff filed a two count Complaint[2], after approximately four (4) years of pre-suit settlement negotiations proved unfruitful. In so doing, Plaintiff included in its prayer for relief as to all counts, a request for attorneys' fees pursuant to Va. Code § 38.2–209, which provides:

> Notwithstanding any provision of law to the contrary, in any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy or fidelity bond or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

After Defendants were unsuccessful in their Motions to Dismiss, Motions to Transfer Venue, and Motions to Stay Proceedings based on abstention principles, Defendants ultimately filed their respective Answers on or about May 1, 2017. ECF Nos. 32-33. Plaintiff served Defendants with its First Set of Requests for Discovery Production on or about May 26, 2017. Pursuant to the

---

[2] Count One seeks a Declaratory Judgment against both Defendants and Count Two alleges Breach of Contract by both Defendants. ECF No. 1.

parties' agreement, Defendants submitted their objections, responses, and a Privilege Log on June 27, 2017. On July 7, 2017, Plaintiff's counsel sent a letter to Defendants outlining what Plaintiff considered deficiencies in Defendants' discovery responses to which Defense counsel responded on July 13, 2017. In an effort to resolve these disputes, the parties conferred by telephone on August 16, 2017, but contested issues persisted.

**II. Defendants' Motion to Bifurcate and Motion to Stay Discovery (ECF Nos. 47-48; 49-50)**

On or about September 8, 2017, Defendants filed a Motion to Bifurcate Discovery and accompanying memorandum, ECF Nos. 47-48, and a Motion to Stay Discovery Relating to "Bad Faith", ECF Nos. 49-50,[3] to which Plaintiff filed a single Opposition, ECF No. 53. Defendants filed their Joint Reply on September 20, 2017, ECF No. 58. Essentially, the gravamen of Defendants' Motions appears to be their desire for the Court to bifurcate not only the claim for attorneys' fees, but also discovery related thereto, and specifically with regards to Plaintiff's Requests for Production of Documents Nos. 11 and 12.[4] *See* ECF No. 48 at 4-5; ECF No. 50 at 4-5. Defendants insist that their efforts are necessary "to protect Defendants from [Plaintiff's] sandbagging discovery." ECF No. 58 at 4.

As an initial matter it should be noted that Defendants, through two footnotes, ECF No. 48 at 3 nn.1-2; ECF No. 50 at 3 nn.1-2, seem to suggest that the Virginia statute providing for additional recovery of attorneys' fees for bad faith in a contract claim is not applicable to the

---

[3] These four filings (ECF Nos. 47-50) are the result of the Clerk's office requiring Defendants to refile their original Motion and Memorandum (ECF Nos. 47-48) a second time (ECF Nos. 49-50) so that there were two separate Motions for each type of relief requested, i.e., a Motion to Bifurcate Discovery and a Motion Stay Discovery. The Court notes that the filings (motion and accompanying memorandum in support) are identical.

[4] Plaintiff's First Set of Requests for Production of Documents Request No. 11 seeks "all Documents concerning Claims, including, but not limited to, Your "claim file(s)"- for Hopeman, all Documents that refer, discuss, or relate to Claims, and all Documents concerning any investigations or studies which 'have been initiated or conducted by You or on Your behalf with respect to Claims." ECF No. 46, attach. 3 at 7. Request No. 12 seeks production of "all Documents concerning any audits, surveys, investigative actions, loss prevention activities, studies, reserve studies, suggestions, recommendations, evaluations, appraisals, advice or reports that You prepared or obtained concerning the Claims, Hopeman, or its products, facilities, or operations." ECF No. 46, attach. 3 at 7.

3

claim sub judice, and instead "submit the law of New York applies" and their filings cite to the pertinent Virginia statute only because Plaintiff's claims are predicated thereon.[5] Neither the Motions to Bifurcate/Stay Discovery nor memoranda in support appear to make any further mention of the applicability of New York law beyond these two footnotes. In the event that they did, Plaintiff vehemently rejects this notion, and the Court is inclined to agree. As Plaintiff notes, in Virginia "everything related to the *making* of the contract is to be governed by the law of the place where it is made; everything related to the *performance* of the contract is to be controlled by the law of the place of performance." *Black v. Powers*, 628 S.E.2d 546, 554 n.8 (Va. Ct. App. 2006) (emphasis in original) (citation and internal quotation marks omitted). Thus, because Plaintiff is incorporated in Virginia[6], and has been headquartered there since at least 1976, its sole office is in Virginia[7], and Defendants' duty to perform is to pay Plaintiff for the asbestos-related liabilities at its Virginia headquarters, Virginia law controls Defendants' performance under the contracts and their potential liability for costs and attorneys' fees. *See Seneca Specialty Ins. Co. v. Dockside Dolls, Inc.*, No. 3:12CV19-REP-DJN, 2012 WL 3579879, at *3 (E.D. Va. June 22, 2012), *report and recommendation adopted*, No. 3:12CV19, 2012 WL 3562755 (E.D. Va. Aug. 17, 2012) ("It is Seneca's failure to pay Dockside that might constitute a breach of the insurance policy. Because those funds are to be paid at Dockside's place of

---

[5] Defendants' Opposition to Plaintiff's Motion to Compel (ECF No. 51) contains the same argument, though more developed in the Opposition to the Motion to Compel than in the Motions to Bifurcate/Stay. For example, in their Opposition (ECF No. 51), Defendants argue that New York law applies because "the policies at issue were delivered to [Plaintiff's] office in New York, the place of contract was New York, and New York insurance law will apply to the policies at issue." ECF No. 51 at 8 n.4.

[6] *See* ECF No. 1 at 1 ¶ 2 ("Hopeman is a corporation existing under the laws of the Commonwealth of Virginia with its principal place of business in Waynesboro, Virginia").

[7] *See* ECF No. 13, attach. 1 at 1-2, ¶¶ 3-7 ("Hopeman is a corporation both headquartered in and organized under the laws of the Commonwealth of Virginia. . . Hopeman originally was incorporated in Delaware, but reincorporated to Virginia in February 2007. . . Hopeman's headquarters is in Waynesboro, Virginia. Previously, Hopeman was headquartered in New York, New York. Based on its corporate records, Hopeman moved its accounting department (including the insurance purchasing function) and shipyard operations to Waynesboro, Virginia in 1971, and by 1976 Hopeman's principal place of business and headquarters were located at 435 Essex Avenue, Waynesboro, Virginia.").

business in Virginia, Seneca's alleged failure to perform occurred in Virginia. Thus, Virginia law governs issues of performance.").

Federal Rule of Civil Procedure 42(b) governs a party's motion to bifurcate. *Saint John's African Methodist Episcopal Church v. GuideOne Specialty Mut. Ins. Co.*, 902 F. Supp. 2d 783, 785 (E.D. Va. 2012) (citing *Epps v. Arise Scaffolding & Equip., Inc.*, No. 2:10cv189, 2011 WL 1566004, at *12 (E.D. Va. Feb. 17, 2011)). Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues . . ." Fed. R. Civ. P. 42(b). In the Fourth Circuit, it is well-established that the decision whether to bifurcate pursuant to Rule 42(b) "is within the sound discretion of the trial judge." *Bowie v. Sorrell*, 209 F.2d 49, 51 (4th Cir. 1953). As identified earlier, the crux of Defendants' Motions to Bifurcate and Stay Discovery relating to "Bad Faith" is that a Plaintiff verdict on the breach of contract claim is a prerequisite to any discovery on the matter of bad faith. According to Defendants, ***unless and until*** Plaintiff secures a favorable disposition on its breach of contract claim (to wit: that Defendants improperly denied Plaintiff's insurance claims and demands for payment), Plaintiff is not entitled to discovery on the subject, and specifically whether such denials were in bad faith. Defendants are not entirely incorrect. *See Styles v. Liberty Mut. Fire Ins. Co.*, No. 7:06CV00311, 2006 WL 1890104, at *1 (W.D. Va. July 7, 2006) ("The defendant is correct that an award of fees and costs under this statute cannot be adjudicated until a decision has been issued on the breach of contract claim. It is incorrect, however, in asserting that the statutory remedy must be dismissed until the contract claim is decided."). However, it is a misstatement of the applicable law in the Fourth Circuit to contend that a decision to bifurcate the award of attorneys' fees based on bad faith unequivocally extends such bifurcation to discovery as well.

In their Motions, Defendants rely heavily on two (2) cases in support of their argument for bifurcation and a stay of discovery: *Massachusetts Bay Ins. Co. v. Decker*, No. 7:11-CV-00342, 2012 WL 43614 (W.D. Va. Jan. 9, 2012) and *Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F. Supp. 3d 506 (E.D. Va. 2014). As Judge Jackson observed in one such case cited by Defendants in support of their Motions, "[t]he statute is 'designed to punish an insurer guilty of bad faith in denying coverage or withholding payment and to reimburse an insured who has been compelled by the insurer's bad-faith conduct to incur the expense of litigation.'" *Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F. Supp. 3d 506, 512 (E.D. Va. 2014) (hereinafter "*Shipping Boxes*") (quoting *CUNA Mut. Ins. Soc. v. Norman*, 237 Va. 33, 375 S.E.2d 724, 726 (1989)). In *Shipping Boxes*, Judge Jackson ultimately granted the Motion to Bifurcate, observing that "[o]ther district courts have granted similar requests, noting that delaying discovery on the issue of the insurer's bad faith is 'expedient' where it may not even ultimately be necessary." *Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F. Supp. 3d 506, 513 (E.D. Va. 2014) (citing *Massachusetts Bay Ins. Co. v. Decker*, No. 7:11-CV-00342, 2012 WL 43614, at *2 (W.D. Va. Jan. 9, 2012); *Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 594 F.Supp.2d 630, 655 (E.D.Va. 2009) ("A claim under § 38.2–209 may not therefore be brought as a separate cause of action ... but only as a source of recovery of costs and attorney's fees *once a judgment is entered against the insurer.*") (emphasis in original)). *Shipping Boxes* is distinguishable from the instant case in two respects.

First, the opposing party (Shipping Boxes) did not object to the Motion to Bifurcate. The same can certainly not be said for this Plaintiff whose Motion to Compel (ECF No. 45) appears to be the impetus for Defendants' Motions to Bifurcate and Stay Discovery. In their Joint Reply (ECF No. 58), Defendants minimize this distinction as "irrelevant" because "it is 'the interest of

efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties." ECF No. 58 at 5 (citing *Freeman v. Globe Life and Accident Ins. Co.*, No. 5:13-cv-05249, 2013 WL 12180763, at *2 (S.D.W. Va. Aug. 2, 2013) (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2388 (3d ed. 2012))). The Court notes that while the *Freeman* decision arises out of a sister division within the Fourth Circuit, its holding does not amount to controlling law in this district and in this case. *See McBurney v. Young*, 667 F.3d 454, 465 (4th Cir. 2012), *aff'd*, 569 U.S. 221 (2013) ("First, as out-of-circuit authority, it is not binding on this Court."); *United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 211 (4th Cir. 2017) (same). Furthermore, *Freeman* sought the bifurcation of the bad faith issue at trial, as opposed to discovery of the same. As discussed further herein, the Court does not equate bifurcation of a triable issue with bifurcation of discovery regarding the issue. The *Freeman* Court articulated the sentiments shared by this Court: "although the evidence needed to properly support the declaratory judgment question and any asserted breach of contract claim may likely be similar, the evidence and legal dispute relative to the coverage question and any asserted bad faith claim will be different." *Freeman v. Globe Life & Accident Ins. Co.*, No. 5:13-CV-05249, 2013 WL 12180763, at *2 (S.D.W. Va. Aug. 2, 2013).

As a second point of distinction, in *Shipping Boxes*, the request for bifurcation occurred very early on in the proceedings, via a Motion to Bifurcate which was filed concomitantly with a timely filed Motion to Dismiss. Here, the timing of Defendants' Motions to Bifurcate and Stay Discovery *could* be indicative of dilatory tactics and a tacit admission of bad faith denials. According to Plaintiff, this is merely Defendants' attempt to thwart Plaintiff's previously filed Motion to Compel, which seeks, among other things, discovery production regarding Defendants' alleged bad faith in denying payment of Plaintiff's claims. *See* ECF No. 45. As

Plaintiff notes, and is corroborated by the docket entries, it does appear that Defendants had ample opportunity to raise this issue before September 8, 2017 and did not. Defendants have requested (and been denied) several other forms of relief (i.e., a Motion to Transfer Venue to New York, Motion to Dismiss, Motion to Stay these Proceedings pending resolution of a New York station action, etc.), but at no time was the relief now sought by the Motions to Bifurcate and Stay "Bad Faith" Discovery requested, nor were these arguments regarding bifurcation or discovery raised. Indeed Plaintiff has only ever proceeded on one Complaint: the original one filed on December 27, 2016 which included the required references to Defendants' alleged bad faith and notice that Plaintiff planned to seek attorneys' fees pursuant to Va. Code § 38.2–209. *See* ECF No. 1 at 8, ¶ 40; *id.* at 9, ¶ C. This is an approved method of complying with the notice requirements pursuant to the operative statute and case law interpreting the same. *See Seneca Specialty Ins. Co. v. Dockside Dolls, Inc.*, No. 3:12CV19-REP-DJN, 2012 WL 3579879, at *4 (E.D. Va. June 22, 2012), *report and recommendation adopted*, No. 3:12CV19, 2012 WL 3562755 (E.D. Va. Aug. 17, 2012) (explaining that "[t]o obtain fees under § 38.2–209, 'a party must notify its adversary in its complaint that it plans to seek costs and attorneys' fees, and the complaint must contain an allegation of bad faith ... so that the allegation may be investigated during discovery.' To that end, '[n]either a separate suit nor a separate count is necessary to satisfy those requirements.' . . . Instead, the appropriate procedure is for a plaintiff to "stat[e] that it plans to seek costs or attorneys' fees under section 38.2–209 in its prayer for relief' and then 'seek its costs or attorneys' fees by filing a suitable motion' if judgment is ultimately entered." (quoting *Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, No. 3:08cv233, 2008 WL 2857191, at *5-6 (E.D. Va. July 21, 2008)).

Defendants also cite to a recent Eastern District of Virginia case decided in June 2017 for the proposition that "[b]ad faith is only a source of additional recovery on a breach of contract claim against the insurer." *Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co.*, No. 116CV00664GBLMSN, 2017 WL 2456987, at *10 (E.D. Va. June 5, 2017) (citing *Massachusetts Bay Ins. Co. v. Decker*, 7:11–CV–00342, 2012 WL 43614, at *1 (W.D. Va. Jan. 9, 2012); *Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 594 F.Supp.2d 630 (E.D. Va. 2009); *U.S Airways, Inc. v. Commonwealth Ins. Co.*, No. 03-587, 2004 WL 1094684, at *9 (Va. Cir. Ct. May 14, 2004) ("A judgment against the insurer acts a condition precedent to any claim of bad faith in Virginia[.]"). The Court (and indeed Plaintiff) recognizes the legal argument raised by Defendants and concedes that recovery can only be had upon a judicial finding that a breach of contract occurred. However, this principle cannot be overextended to apply as equally to *discovery* as it does to *recovery* given the obvious overlap in discoverable evidence that would support Plaintiff's breach of contract claim as equally as it would support an award of attorneys' fees and costs for bad faith.

Although not cited by Defendants but warranting discussion by this Court, is a 2012 case in which Judge Davis granted a Motion to Bifurcate on the question of presenting evidence of bad faith in the presence of the jury, as opposed to discovery relating thereto. *See Saint John's African Methodist Episcopal Church v. GuideOne Specialty Mut. Ins. Co.*, 902 F. Supp. 2d 783, 785 (E.D. Va. 2012) ("GuideOne has moved in limine to exclude alleged evidence of bad faith or to bifurcate trial on the issue of bad faith."). Ultimately, Judge Davis ruled that "[a]ny reference to GuideOne's alleged bad faith in denying Saint John's insurance claim or failing to pay Saint John's under the insurance policy, as well as any evidence offered solely to establish such bad faith, would serve only to prejudice the jury. Therefore, GuideOne's request to bifurcate the

question of bad faith is **GRANTED**." *Saint John's African Methodist Episcopal Church v. GuideOne Specialty Mut. Ins. Co.*, 902 F. Supp. 2d 783, 787 (E.D. Va. 2012) (citing Fed. R. Civ. P. 42(b)) (internal citation omitted) (capitalization and emphasis in original). Here, *Saint John's* is also distinguishable from this case because the *Saint John's* Motion to Bifurcate was raised at the Motion for Summary Judgment stage, as opposed to when discovery is ongoing and remains open for at least another month, which is the status of the instant case.[8] Additionally, the Court does not interpret Plaintiff's Opposition (ECF No. 53) or its Complaint (ECF No. 1) to suggest that the issue of bad faith and the award of attorneys' fees would be presented to the jury. As the Court noted previously, and continues to emphasize, evidence of bad faith and evidence of an improper denial of coverage are not mutually exclusive. Indeed it would be difficult to imagine a scenario in which there was evidence to support a finding of bad faith but *not* a breach of contract.

Another case relied upon by Defendants in support of their Motions to Bifurcate/Stay Discovery is *Massachusetts Bay Ins. Co. v. Decker*, wherein the court denied the Insurer counter-defendant's Motion to Dismiss where counter-plaintiff had pleaded bad faith and the attendant request for attorneys' fees as a separately numbered count because "Virginia law undoubtedly gives [counter-plaintiff] the right to recover attorney's fees and costs should the court determine that [counter-defendant], acting in bad faith, denied coverage or failed to make a payment under the policy. It would therefore place form over substance to require dismissal on this ground." *Massachusetts Bay Ins. Co. v. Decker*, No. 7:11-CV-00342, 2012 WL 43614, at *2 (W.D. Va. Jan. 9, 2012). Although the *Decker* court denied the Motion to Dismiss, it found that the "prerequisite" of a bad faith denial of coverage or payment prior to seeking attorneys' fees

---

[8] Non-expert discovery closes on October 31, 2017. ECF No. 41 at 2, ¶ 3.

inform[ed] the court's opinion that discovery on the issue should be stayed until the underlying dispute is resolved. Only if the essential contract dispute is decided in [counter-plaintiff's] favor must the court proceed to the issue of bad faith, and the factual issues surrounding the former will likely prove to be few and distinct in comparison to the factual issues surrounding the latter. Staying discovery on the issue of bad faith therefore appears to be expedient.

*Massachusetts Bay Ins. Co. v. Decker*, No. 7:11-CV-00342, 2012 WL 43614, at *2 (W.D. Va. Jan. 9, 2012). The *Decker* Court held that "discovery on the issue of bad faith is hereby STAYED until the underlying contract dispute is resolved." *Massachusetts Bay Ins. Co. v. Decker*, No. 7:11-CV-00342, 2012 WL 43614, at *2 (W.D. Va. Jan. 9, 2012) (capitalization in original). When reaching this conclusion, the *Decker* Court noted that "[i]n applying [§ 38.2–209], courts have adopted a variety of procedural approaches." (comparing *U.S. Airways, Inc. v. Commonwealth Ins. Co.*, No. 03–587, 2004 WL 1094684, at *23–26 (Va.Cir.Ct. May 14, 2004) (stating that "a judgment against the insurer acts as a condition precedent to any claim of bad faith in Virginia" and dismissing U.S. Airways' § 38.2–209 claim), with *Wilson v. State Farm*, No. CL06–2308, 2009 Va. Cir. LEXIS 143, at *3–8, 2009 WL 7416543 (Va.Cir.Ct. Dec. 14, 2009) (finding a § 38.2–209 claim premature but merely bifurcating, rather than dismissing, the claim), and *Styles v. Liberty Mut. Fire Ins. Co.*, No. 7:06CV00311, 2006 WL 1890104, at *7-8 (W.D. Va. July 7, 2006) (declining to dismiss or bifurcate a § 38.2–209 claim)). To the extent that Defendants argue that allowing discovery on both issues to proceed simultaneously would cause great expense and delay due to the privileged and sensitive nature of the internal documents, the correct mechanism for raising this argument and objecting to production is by opposing Plaintiff's Motion to Compel (ECF No. 45), which Defendants have done. *See* ECF No. 51 (Defendants' Joint Opposition to Plaintiff's Motion to Compel Production of Documents).

Unsurprisingly, Plaintiff's Opposition to the Motions to Bifurcate/Stay Discovery relies heavily on *Styles v. Liberty Mut. Fire Ins. Co*, in which the court declined to bifurcate discovery, reasoning that

> [w]hether the defendant's denial of coverage under the policy was proper will depend on whether there is evidence that the plaintiff committed the arson. Whether the plaintiff committed arson will invariably include evidence as to how the defendant reached its conclusions, including details of the defendant's investigation and its interaction with local fire investigators. It would be ***inefficient to bifurcate discovery on issues that parallel each other*** and thus, the court will allow discovery on both issues to proceed simultaneously.

*Styles v. Liberty Mut. Fire Ins. Co.*, No. 7:06CV00311, 2006 WL 1890104, at *3 (W.D. Va. July 7, 2006) (emphasis added).

Here, although not alleged as a separate ground (because it is not required), Plaintiff contends that Defendants breached their contracts because their "denials of coverage, failures to defend, and refusals to make payment to [Plaintiff] under the [pertinent] Policies were not in good faith." ECF No. 1 at 8, ¶ 40. The Court does not interpret this allegation to mean that Plaintiff premises its breach of contract claim on the theory that Defendants violated the common law duties of good faith and fair dealing.[9] *See Suntrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N. Carolina*, 508 F. App'x 243, 252-53 (4th Cir. 2013) (finding that where a party "did not employ the precise phrase 'breach of an implied covenant of good faith and fair

---

[9] Case law suggests that Plaintiff could have pleaded this theory of breach because "Virginia law permits general and consequential damages when an insurer breaches its duty of good faith. " *Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, 709 F. Supp. 2d 441, 450 (E.D. Va. 2010) (citing *TIG Ins. Co. v. Alfa Laval, Inc.*, No. 3:07CV683, 2008 WL 639894, at *3 (E.D. Va. March 05, 2008) (citing *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 677 (4th Cir. 1986))). *See also Great Am. Ins. Co. v. GRM Mgmt., LLC*, No. 3:14CV295, 2014 WL 6673902, at *8 n.18 (E.D. Va. Nov. 24, 2014) ("[I]n order to state a claim for breach of the implied covenant of good faith and fair dealing under Virginia law, Plaintiff must allege facts, that if true, are sufficient to establish two elements: '(1) a contractual relationship between the parties, and (2) a breach of the implied covenant'") (quoting *Parris v. PNC Mortg.*, No. 2:14CV142, 2014 WL 3735531, at *6 (E.D. Va. July 28, 2014) (quoting *Enomoto v. Space Adventures, Ltd.*, 624 F.Supp.2d 443, 450 (E.D. Va. 2009))).

dealing'" in its briefing either before or after the bench trial on the counterclaim until prompted to do so by court order... that party "fail[ed], as a matter of fact, to put [the opposing party] on notice that an alleged breach of the implied covenant of good faith and fair dealing was at issue " and noting that "even Virginia state law would not have put [the opposing party] on notice."). Notwithstanding the aforementioned conclusion, the Court finds that bifurcation of discovery is not appropriate because

> *[t]he issue of coverage is intimately intertwined with the issue of bad faith*. The breach of contract claim is premised on the plaintiff's allegation that the defendant denied his claim in bad faith. [Defendants'] actions subsequent to the loss claim filed by the plaintiff are material not only for the issue of bad faith but also to the issue of whether coverage should have been denied. This is because [Defendants'] rationale for its coverage decision will ultimately affect whether such decision was correct and whether there was bad faith.

*Styles v. Liberty Mut. Fire Ins. Co.*, No. 7:06CV00311, 2006 WL 1890104, at *3 (W.D. Va. July 7, 2006) (emphasis added). Additionally, the Court finds persuasive the reasoning expressed in *Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, No. 3:08-CV-233, 2008 WL 2857191 (E.D. Va. July 21, 2008). In *Adolf Jewelers*, the court held that that where a count alleged that a defendant "acted in bad faith in addressing Adolf Jewelers' claim for coverage," the count effectively "brings the subject of bad faith within the scope of discovery in this matter." *Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, No. 3:08-CV-233, 2008 WL 2857191, at *6 (E.D. Va. July 21, 2008).

This Court finds additional support for its decision to deny a stay of discovery in other recent decisions in this District. *See Great Am. Ins. Co. v. GRM Mgmt., LLC*, No. 3:14CV295, 2014 WL 6673902, at *11 (E.D. Va. Nov. 24, 2014) (holding "[t]o effectuate a more expeditious and economic course of litigation as to this breach of contract claim in the absence of an express denial of coverage, the Court will GRANT Great American's Motion to Bifurcate. However, *the*

***Court will not permit bifurcated discovery or an evidentiary hearing on attorneys' fees to the extent those are included in Great American's motion***. The Court will determine the attorneys' fees following the resolution of the substantive claims in this matter.") (emphasis added) (citing *Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F. Supp. 3d 506 (E.D. Va. 2014); *Saint John's African Methodist Episcopal Church v. GuideOne Specialty Mut. Ins. Co.*, 902 F. Supp. 2d 783, 787 (E.D. Va. 2012)). *See also Seneca Specialty Ins. Co. v. Dockside Dolls, Inc.*, No. 3:12CV19-REP-DJN, 2012 WL 3579879, at *5 (E.D. Va. June 22, 2012), *report and recommendation adopted*, No. 3:12CV19, 2012 WL 3562755 (E.D. Va. Aug. 17, 2012) (holding that "[h]ere, there is no reason to bifurcate the issue of attorney's fees under Va. Code § 38.2–209. Finally, there is no need to delay discovery on the matter, as this Court has specifically permitted such discovery to occur concurrent with discovery of liability in similar cases.") (citing *Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, No. 3:08-CV-233, 2008 WL 2857191, at *5 (E.D. Va. July 21, 2008) ("[T]he allegation may be investigated during discovery")) (internal citations omitted).

It appears that Defendants erroneously conflate bifurcation of a trial issue (whether Defendants breached their contract by denying coverage and payment to Plaintiff) with bifurcation of discovery on the issue. While it would normally follow that a party is not entitled to discovery on a matter that will not be tried, here, the nature of the alleged breach(es) will necessarily overlap with the separate but related allegations that doing so was in bad faith. Here, the Court is inclined to grant a Motion to Bifurcate the actual issue, namely, not allow the jury to decide the issue of whether Defendants exhibited bad faith (not that the Court interprets Plaintiff's filings as indicating its intent to do so), but the Court is not so inclined to exercise its discretion to bifurcate discovery of the same given the inextricably intertwined nature of the

scope of permissible discovery. *See Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 574 (4th Cir. 2017), as amended (Mar. 7, 2017) ("The 'scope and conduct of discovery are within the sound discretion of the district court'") (quoting *Lewis v. Bloomsburg Mills, Inc.*, 608 F.2d 971, 973 (4th Cir. 1979)). Further, to the extent that Defendants seek to keep such evidence (allegations of bad faith) outside the purview of the jury, the appropriate mechanism would be to file a Motion in Limine[10], or to otherwise raise an objection on the basis that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403.

### III. Conclusion

The Court will follow the procedure and rationale provided by Judge Lauck in *Great Am. Ins. Co. v. GRM Mgmt., LLC* and Judge Novak in *Seneca Specialty Ins. Co. v. Dockside Dolls, Inc.*, and hold that to effectuate a more expeditious and economic course of litigation as to this breach of contract claim, the Court will grant Defendants' Motion to Bifurcate. However, the Court will not permit bifurcated discovery to the extent that is requested by Defendants' Motion to Bifurcate and Motion Stay Discovery; there is no need to delay discovery on the matter because other courts in the Eastern District of Virginia have specifically permitted such discovery to occur concurrent with discovery of liability in similar cases. *See Great Am. Ins. Co. v. GRM Mgmt., LLC*, No. 3:14CV295, 2014 WL 6673902, at *11 (E.D. Va. Nov. 24, 2014) (citing *Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F. Supp. 3d 506, 513 (E.D. Va. 2014); *Saint John's African Methodist Episcopal Church v. GuideOne Specialty Mut. Ins. Co.*, 902 F. Supp. 2d 783, 787 (E.D. Va. 2012)); *Seneca Specialty Ins. Co. v. Dockside Dolls, Inc.*, No. 3:12CV19-

---

[10] This is the avenue chosen by the defendant Insurer in *Saint John's African Methodist Episcopal Church v. GuideOne Specialty Mut. Ins. Co.*, 902 F. Supp. 2d 783, 785 (E.D. Va. 2012).

REP-DJN, 2012 WL 3579879, at *5 (E.D. Va. June 22, 2012), *report and recommendation adopted*, No. 3:12CV19, 2012 WL 3562755 (E.D. Va. Aug. 17, 2012).

Accordingly, and upon consideration of Defendants' Motion to Bifurcate and accompanying memorandum, ECF Nos. 47-48, Defendants' Motion to Stay Discovery and accompanying memorandum, ECF Nos. 49-50, Plaintiff's Opposition thereto, ECF No. 53, Defendants' Reply, ECF No. 58, and for the reasons provided herein, Defendants' Motion to Bifurcate (ECF No. 47) is **GRANTED** and Defendants' Motion to Stay Discovery (ECF No. 49) is **DENIED**.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**

Lawrence R. Leonard
United States Magistrate Judge

Newport News, Virginia
October 2, 2017